**UNITED STATES of America**

v.

**Earl RICHARDS.**

**Crim. No. CR 84–239.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 10, 1984.

Richard W. Hendrix, Asst. U.S. Atty., Atlanta, Ga., for plaintiff.

Farish Carter Tate, Atlanta, Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

The above criminal case is again before the court for further consideration of the proper amount of restitution to be awarded to a criminal victim pursuant to 18 U.S.C. § 3579.

Defendant pled guilty to two counts of a four-count indictment on August 13, 1984. Count One alleges that Defendant, a bank officer, made a false entry in the bank's records when he forged a renewal promissory note in the name of Linda Dubose in the amount of $37,038.50, in violation of 18 U.S.C. § 1005. Count Four alleges that Defendant misapplied $34,940.22, in violation of 18 U.S.C. § 656. The Count Four transaction is unrelated to the Count One transaction.

A sentencing hearing was held on September 18, 1984. No contention was made that the bank lost money as a result of the Count Four transaction. However, the Count One offense did cause some loss to the bank. The amount of the loss was unclear, however. The court tentatively set the amount of restitution at $10,000, but agreed to reconsider if the bank requested same within thirty days. The bank did so request.

At a hearing held on November 16, 1984, the bank's counsel appeared. At the request of the Assistant United States Attorney, he presented the bank's claim that $54,000 is the proper amount of restitution. Defendant, through his attorney, presented his view that no restitution, or some nominal amount of restitution is appropriate.

Having heard from both sides, it is apparent to the court that the salient facts are not in dispute. The dispute centers around the proper measurement of the bank's loss.

The undisputed facts are these: originally the bank through Defendant made a loan to one Linda Dubose in the approximate sum of $37,000. The loan was secured by a second mortgage on a residence (the "Dubose property"). A first mortgage secured a note to another lender of about $15,000. The property had a value of $21,000.

At the time the loan was originally made, Ms. Dubose was employed by Southern Bell. No evidence has been presented showing that the loan was made other than in the ordinary course of business. It does appear, however, that the Defendant exercised poor judgment. There was only $7,000 equity in the Dubose property to collateralize the bank's loan. Repayment

of the balance, or about $30,000, was strictly subject to Ms. Dubose's willingness and ability to repay.

At some point after the loan was made, Ms. Dubose stopped making payments. Defendant decided to forge Ms. Dubose's signature on a renewal note. This placed the loan in a technically current status in the bank's records. This forgery and related record keeping entries constitute the Count One offense to which Defendant pled guilty.[1]

Ms. Dubose has declared bankruptcy. It is relatively clear (though not totally clear) that whatever funds the bank may now realize will be through liquidation of the collateral. The problem, however, is that the bank's secured position is being challenged. Evidently, the bank's second mortgage on the Dubose property was not properly recorded so as to protect it against third party claims.

The bank is entitled to restitution from the Defendant for whatever loss the Count One offense caused the bank. The impact of the forged renewal note, in the court's opinion, was that the bank did not have an opportunity to act in a prompt and timely manner to cut its losses. Had the bank known that Ms. Dubose was behind in payments on her loan, it could have taken steps to keep the first mortgage current, to perfect its secured position, and to begin its own foreclosure proceeding. The bank could then have proceeded to attempt to resell the property at a favorable price. It seems likely that had the bank had time to seek an orderly resale, it could have realized $7,000. This sum, plus the time value of the funds unnecessarily expended by the bank to pay off the first mortgage, plus associated fees and expenses constitute a

proper amount of restitution. Having fully considered the facts presented to it, the court is convinced that $10,000 restitution is fair to both the Defendant and the bank.[2] Accordingly, the court does AFFIRM that portion of its order of September 18, 1984 finding that the Defendant must make restitution in the sum of $10,000.

---

1. Thereafter, Defendant did other acts to cover up the delinquent status of the loan. He forged another renewal note. When the holder of the first mortgage on the Dubose property began advertising for sale under power, Defendant caused the bank to pay $15,000 to the first mortgagee to purchase or pay off the first mortgage. This $15,000 payoff and accrued interest increased the bank's aggregate "exposure" on the loan to about $54,000, less any value attributable to the security.

2. At a point in time later than the Count One offense, the Defendant unbeknownst to the bank made payments on the loan in the borrower's name. These payments aggregate approximately $6,000. Because the court does not consider that these payments were directly related to mitigation of the Count One losses, it does not subtract them in computing the proper amount of restitution.